## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JEAN M. FLYNN and JAMES E. STEAD,
Individually and on behalf of all others
similarly situated,

                              Plaintiffs,

                                                        CIVIL ACTION NO.:
                                                        3:15-cv-01053-JAM

         -against-

DIRECTV, LLC and MAS TEC, INC.,

                              Defendants.
                                                        September 8, 2015

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs, individually, and on behalf of all others similarly situated, upon knowledge as to themselves and upon information and belief as to all other matters, as and for their Amended Complaint against Defendants, allege as follows:

### NATURE OF CLAIMS

1.      Plaintiffs bring this action individually, and on behalf of all similarly situated persons and/or entities ("Landlords") that own and lease residential multiple dwelling unit properties ("MDU's") in the State of Connecticut, upon which Defendants, by their agents, servants and/or employees have, on at least one occasion during the applicable statutory period, without first receiving prior written or verbal Landlord authorization and/or permission,

installed DIRECTV equipment on the roof and/or exterior walls of said MDU. Plaintiffs seek injunctive relief, compensatory, consequential and punitive damages; costs and reasonable attorney's fees.

2.      Plaintiffs also allege violations of the Connecticut Unfair Trade Practices Act (CUTPA), 21 CA 275, Sec. 42-110a *et. seq.* and seek injunctive relief, compensatory, consequential, punitive damages, costs and reasonable attorney's fees for Defendants' deceptive business practices and violations of public policy, as herein alleged.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over this class action pursuant to 18 U.S.C. § 1332(d), which under the provisions of the Class Action Fairness Act ("CAFA") explicitly provides for the original jurisdiction of the Federal Courts in any class action in which any member of the plaintiff class is a citizen of a State different from any defendant, and in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interests and costs.

4.       Plaintiffs allege that the total claims of individual class members in this action are well in excess of $5,000,000 in the aggregate, exclusive of interests and costs, as required by 28 U.S.C. §§ 1332(d)(2),(5).

5.      Plaintiffs are Citizens of Connecticut. DIRECTV is a Citizen of California; MAS TEC, INC., is a citizen of Florida. Thus, any member of the proposed class is a citizen of a state different than any Defendant.

6.       Diversity of citizenship exists under CAFA, as required by 28 U.S.C. §§ 1332(d) (5) (B).

7.     The total approximate number of members of the proposed Plaintiff Class is 25,000 persons/entities.

8.     Venue is proper in the United States District Court for the District of Connecticut under 28 U.S.C. §§ 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this district and Defendants are subject to personal jurisdiction in this District.

## THE PARTIES

9.     DIRECTV, LLC,("DIRECTV") is a California limited liability corporation with its principal place of business located at 2230 East Imperial Highway, El Segundo, CA 90245.

10.     DIRECTV actively transacts and is doing business in the State of Connecticut.

11.     MAS TEC, INC., (" MAS TEC") is a Florida corporation with its principal place of business located at 800 S. Douglas Road, Coral Gables, FL 33134.

12.     MAS TEC actively transacts and is doing business in the State of Connecticut.

13.     Plaintiff, JEAN M. FLYNN, is a citizen and resident of New Fairfield, Connecticut 06812.

14.     Plaintiff, JAMES E. STEAD, is a citizen and resident of New Fairfield, Connecticut 06812.

15.      At all relevant times, Plaintiffs were the owners and landlords of an  MDU located at 106 Greenmount Terrace, Waterbury, Connecticut

3

06708.

## STATEMENT OF MATERIAL FACTS

16.     At all relevant times, DIRECTV has been engaged in the marketing and sales of DIRECTV satellite television service and the leasing and installation of DIRECTV antennae such as a satellite dish and or other equipment designed for over-the-air reception of television broadcast signals ("Equipment") in the State of Connecticut.

17.     DIRECTV is a leading provider, in Connecticut, of digital television entertainment programming via satellite to residential and commercial subscribers.

18.     DIRECTV's digital entertainment programming is provided to subscribers by means of the Equipment that it licenses/leases to its subscribers and installs upon the MDU in which the subscriber rents and resides.

19.     MAS TEC is a specialty contractor providing installation fulfillment services to DIRECTV and other companies specializing in the telecommunications, broadband cable, wireless, and satellite industries.

20.     MAS TEC is one of the largest DIRECTV installation and service companies in the United States, serving over 200,000 customers each month.

21.     At all relevant times, MAS TEC had a contractual relationship with DIRECTV to install DIRECTV equipment at Plaintiffs' MDU

property and at or on  other MDUs, located elsewhere in Connecticut.

22.     The contracts between DIRECTV and MAS TEC specify the  nature of the satellite dish installation services they are to provide, and establish policies and  procedures to which MAS TEC technicians must adhere.

23.     Satellite system equipment installed by MAS TEC, pursuant to these contracts, is provided and/or sold to MAS TEC by DIRECTV.

24.     DIRECTV satellite system equipment is installed by MAS TEC at the places  of residence of DIRECTV customers/subscribers.

25.     DIRECTV requires all prospective  M A S   T E C  technicians to pass a criminal background check and drug  screening test before working on behalf of DIRECTV.

26.     DIRECTV directs MAS TEC technicians to specific work sites  and details the timeframe in which jobs must be completed.

27.     DIRECTV  monitors  the  location  of  MAS  TEC  technicians, specifies the time at which they are supposed to arrive at appointments, and  regularly  evaluates  completed  work  to  ensure  that  it  meets DIRECTV standards.

28.     DIRECTV determines the number of its customers that will be serviced by  M A S  T E C technicians on any given day and the rate at which they are  paid for each job.

29.     In accordance with the Federal Communication  Commission's Second Report  and Order, *In the Matter of Implementation of Section 207 of the Telecommunications  Act of 1996, Restrictions on Over-the-Air Reception*

*Devices* , 1998 WL 888546 (1998),  *47 C.F.R. 1.4000(d)* a tenant does not have direct or indirect control over the exterior  walls or roof of an MDU, which are common or restricted areas, and therefore the  Regulation does not authorize installation of Equipment in those areas without consent of  the Landlord. In particular, the Second Report and Order makes clear that DIRECTV  cannot drill holes in an exterior wall or roof of an MDU without consent of the Landlord.

30.     As a requirement of FCC rule and regulation, Defendants were required to secure the prior verbal or written consent of the l a n d l o r d / o wners, before drilling  holes in the exterior  walls or roofs of their Connecticut MDUs and permanently affixing DIRECTV  Equipment thereto.

31.     Instead, as a prerequisite for installation of the Equipment DIRECTV requires its subscribers to execute a written permission form, representing that the tenant has secured verbal permission/authorization from their landlord.

32.     MAS TEC technicians were required to secure from DIRECTV subscribers,  an executed written permission form as a pre-requisite for installation of the Equipment

33.     MAS TEC technicians are trained not to seek verbal/written approval and consent for installation, directly from landlords.

34.     The lease between Plaintiffs and their tenants at the subject MDU prohibits the installation of satellite  dishes, including DIRECTV Equipment,

on roofs and/or exterior walls of the subject MDUs.

35.    Defendants had constructive/actual knowledge that the leases between Plaintiffs and their tenants prohibit the installation of DIRECTV Equipment on roofs and/or exterior walls of the subject MDUs, but ignored this prohibition.

36.     At all relevant times herein, Defendants did not require Tenant-subscribers to produce any evidence of prior Landlord approval to install DIRECTV system Equipment.

37.     At all relevant times herein, Defendants did not require Tenant-subscribers to produce any evidence that the subject lease or rental agreement did not have any prohibitions in connection with installation of DIRECTV system Equipment on roofs and/or exterior walls of the subject MDUs.

38.    DIRECTV caused the installation of DIRECTV equipment on roofs and/or exterior walls of the MDUs owned by Plaintiffs and putative members of the class, on the mere representation of any Tenant-subscriber and/or family member over the age of 18 years, that "DIRECTV System installation at (address) has been *verbally* approved by my landlord (or is not required pursuant to my lease or rental agreement.)"

39.    MAS TECH installed DIRECTV equipment on roofs and/or exterior walls of MDUs owned by Plaintiffs and putative members of the class, on the mere representation of the Tenant-subscriber and/or family member over the age of 18 years that "DIRECTV System installation at (address) has been

*verbally* approved by my landlord (or is not required pursuant to my lease or rental agreement.)"

40.     MAS TECH   installed DIRECTV equipment on roofs and/or exterior walls of the MDUs owned by Plaintiffs and putative members of the class, without any knowledge, one way or the other, whether Plaintiff Landlords and putative members of the class had approved such installation.

41.     During all relevant times herein, Defendants, by their agents, servants and/or employees knowingly and intentionally violated the above-referenced FCC rules and regulations, by drilling holes in the exterior walls or roofs of Connecticut MDUs and permanently affixing DIRECTV Equipment thereto, without the prior verbal or written consent of the Plaintiffs-Owners and putative members of the class.

42.     Defendants have circumvented FCC regulations and violated public policy by performing installation of the DIRECTV Equipment on roofs and exterior walls of MDUs without securing prior written/verbal permission from the Plaintiffs-Landlords and/or putative class members.

43.     At all relevant times herein, Defendants never paid any fees and/or other monetary consideration to Plaintiffs or putative members of the class, for the use/occupancy/installation of DIRECTV system Equipment in or on the roofs and exterior walls of MDUs owned by Plaintiffs-Landlords or putative members of the Class.

44.     At all relevant times herein, upon the termination of tenant subscriptions to its satellite television service, DIRECTV abandons its

Equipment permanently affixed to  roofs and exterior walls of MDUs, requiring Plaintiffs-Landlords and putative class  members to expend their own time, money and resources to remove the Equipment and  repair the MDU at the site of affixation.

## CLASS ACTION ALLEGATIONS

45.    This action is brought and may be properly maintained as a Class action pursuant to The Class Action Fairness Act, 28 U.S.C. § 1332.

46.    This action has been brought and may properly be maintained as a class action  against Defendants pursuant to the provisions of Rule 23 of the Federal Rule of Civil  Procedure, because there is a well-defined community of interest in the litigation and the  proposed Classes are easily ascertainable.

47.    Plaintiffs bring this action on behalf of themselves and all others similarly  situated, and seek certification of a Class, defined as:

*All persons and/or entities ("Landlords") that own and lease residential multiple  dwelling units ("MDU's") in the State of Connecticut, upon which  Defendants, by their agents, servants and/or employees have, on at least one occasion  during the applicable statutory period, without first receiving prior written Landlord authorization and/or permission, installed DIRECTV equipment on the roof  and/or exterior walls of said MDU.*

48.    The following are excluded from the Class: any person or entity in

which  Defendants have a controlling interest; the officers, directors,

employees, affiliates,  subsidiaries, legal representatives, heirs, successors

and their assigns of any such person or entity, together with any immediate

family member of any officers, directors,  employee of said persons and/or

entities.

49.     The proposed Class Period is the time beginning three (3) years prior to

the date of  filing of this Class Action Complaint, and extending to the date of

prospective entry of  Judgment for the Class.

50.     Numerosity: Plaintiffs do not know the exact size of the class, but it is

reasonably estimated that the Class is composed of at least t w e n t y   f i v e

thousand (25,000) persons/entities. While the identities of Class members are

unknown at this time, this information can be readily ascertained through

appropriate  discovery of the records maintained by Defendants.

51.     The persons/entities in the Class are so numerous that the joinder of all

such  persons/entities is impracticable and the disposition of their claims in a

class action rather  than in individual actions will benefit the parties and the

courts.

52.     This action involves common questions of law and fact, because each

Class  Member's claim derives from the same nucleus of facts and common

relief by way of  damages as is sought by Plaintiffs.

53.     The questions of law and fact common to the class members

predominate over  questions affecting only individual class members. Thus,

proof of a common or single set  of facts will establish the right of each member

of the Classes to recover and include, but are not limited, to the following:

(a)     Whether Defendants' installation and maintenance of DIRECTV Equipment on roofs and exterior walls of MDUs, was with the consent/permission of Plaintiffs and putative class members;

(b)     Whether Defendants' installation and maintenance of DIRECTV Equipment on roofs and exterior walls of MDUs owned by Plaintiffs and putative class members, constitutes trespass;

(c)     Whether Defendants' abandonment of DIRECTV Equipment permanently affixed to roofs and exterior walls of MDUs owned by Plaintiffs and putative class members, constitutes continuing trespass;

(d)     Whether Defendants are liable to Plaintiffs and putative class members for damages arising from their continuing trespass, and if so, the proper measure of damages;

(e)     Whether Defendants' acts and conduct constitute deceptive or unfair trade practices under CUTPA;

(f)     Whether Defendants acts and conduct justify imposition of punitive damages under CUTPA.

54.     The claims asserted by Plaintiffs in this action are typical of the claims of other Class members, as the claims arise from the same course of conduct by Defendants and the relief sought is identical.

55.     Plaintiffs' claims are typical of the members of the Class, since all such claims arise out of the same business practices of Defendants, characterized by the permanent installation of DIRECTV system Equipment

in or on roofs and/or exterior walls of MDUs, without paying consideration and in the absence of securing prior verbal or written permission therefor from the Plaintiffs-Landlords and putative class members.

56.     Plaintiffs have no interest(s) antagonistic to the interests of the other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in Class action litigation. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

57.     The Class, of which each Plaintiff is a member, is readily identifiable.

58.     A Class action is a superior and cost effective method for the fair and efficient adjudication of the present controversy and there would accrue enormous savings to both the Courts and the Class in litigating the common issues on a class wide, instead of on a repetitive individual basis.

59.     No unusual difficulties are likely to be encountered in the management of this class action in that all questions of law and/or fact to be litigated at the liability stage of this action are common to the Class.

60.     A Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impractical. While the damages suffered by the individual Class members are not insignificant, the amounts are modest compared to the expense and burden of individual litigation. A Class action will cause an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort and expense.

61.     The prosecution of separate actions by individual members of the Class

would run  the risk of inconsistent or varying adjudications, which would (a)
establish incompatible  standards of conduct of Defendants in this action and
(b) create the risk that adjudications  with respect to individual members of
the Class would, as a practical matter, be  dispositive of the interests of the
other members not parties to the adjudications or  substantially impair or
impede their ability to protect their interests. Prosecution as a class
action will eliminate the possibility of repetitious litigation.

### FIRST COUNT
**(Individual Claims for Trespass to Real
Property)**

62.    Plaintiffs incorporate all preceding paragraphs of this complaint as
if fully set  forth herein.

63.    Defendants  intentionally  and  knowingly  installed  DIRECTV  system
Equipment  on  the  roof  of  Plaintiffs'  MDU   without  first  securing  the  prior
verbal or written permission from the Plaintiffs-Owners.

64.    Defendants' acts and conduct were a physical invasion and intrusion
affecting the Plaintiff's exclusive possessory interest of their real property.

65.    Defendants knowingly and intentionally violated FCC rules and
regulations by  drilling holes into the roof of Plaintiffs' MDU and
permanently affixing DIRECTV Equipment thereto, without the prior
verbal or written  consent of the Plaintiffs-Owners.

66.    Plaintiffs did not authorize Defendants or any of  them, verbally or
in writing, to install or maintain DIRECTV Equipment on their MDU.

67.    Defendants never paid Plaintiffs any type of  monetary

consideration for the privilege of installing and/ or maintaining DIRECTV  Equipment on the roof of Plaintiffs' MDU.

68.     The leases between Plaintiffs and their MDU tenants prohibit the installation of any satellite dishes, including DIRECTV Equipment on the roofs and/or exterior walls of  Plaintiffs' MDU.

69.     Plaintiffs' MDU tenants had no legal authority to authorize the installation of any satellite dishes, including DIRECTV Equipment, on the roofs and/or exterior walls of Plaintiffs' MDU.

70.     Defendants' entry upon, use and occupancy of Plaintiffs' MDU, as described  herein, constitutes trespass.

71.     Defendants' entry upon, and unabated use and occupancy of Plaintiffs' MDU, as described herein, constitutes continuing trespass.

72.     Defendants are strictly liable to Plaintiffs for trespass.

73.     As a proximate result of Defendants' trespass, Plaintiffs have sustained economic damage and pecuniary injury.

74.     As a proximate result of Defendants' continuing trespass on Plaintiffs'  MDU, Defendants are liable to the Plaintiffs for damages measured by the value of  the illegal use of plaintiffs' real property to DIRECTTV.

75.     As a proximate result of Defendants' continuing trespass on Plaintiffs'  MDU, Defendants are liable to the Plaintiffs for damages measured by the value of  the illegal use of plaintiffs' real property to MAS TEC.

76.     As a proximate result of Defendants' continuing trespass upon Plaintiffs' MDU,  Defendants are liable to the Plaintiffs for damages for the costs to remove the DIRECTV Equipment and repair the roof at the sites of affixation.

77.     Defendants' continuing trespass upon Plaintiffs' MDU has been intentional, deliberate, with  knowledge of a high degree of probability of harm to Plaintiffs and reckless indifference  to the law.

78.     Defendants' continuing trespass upon Plaintiffs' MDU offends public policy as it has been established by statutes, the common law and otherwise; is immoral, unethical, oppressive, unscrupulous and demonstrates a reckless disregard of the exclusive possessory real property interests of Plaintiffs

79.     Defendants are liable to Plaintiffs for punitive damages.

## SECOND COUNT
### (Class Claims for Trespass to Real Property)

80.     Plaintiffs incorporate all preceding paragraphs of this complaint as if fully set  forth herein.

84.     Defendants intentionally and knowingly installed  DIRECTV system Equipment in or on roofs and/or exterior walls of Connecticut MDUs  without first securing the prior verbal or written permission from members of the Class.

85.     Defendants' acts and conduct were a physical invasion and intrusion

affecting the exclusive possessory interest of Class members in their real property.

86.    Defendants knowingly and intentionally violated FCC rules and regulations by  drilling holes in the exterior walls or roofs of Connecticut MDUs and permanently  affixing DIRECTV Equipment thereto, without the prior verbal or written consent of  members of the Class.

87.    Members of the class did not authorize  Defendants or DIRECTV, verbally or in writing, to install or maintain DIRECTV  Equipment on the roofs and/or exterior walls of their MDUs.

88.    Defendants never paid members of the Class  any type of monetary consideration, for the privilege of installing and/ or maintaining  DIRECTV Equipment on the roofs and/or exterior walls of their MDUs.

89.    Defendants' entry upon, use and occupancy of MDUs owned by members of the Class, as described herein, constitutes trespass.

90.    Defendants' entry upon, and unabated use and occupancy of MDUs owned by Class members, constitutes continuing trespass.

91.    Defendants are strictly liable to members of the Class for trespass.

92.     As a proximate result of Defendants' trespass, Class members have  sustained economic damage and pecuniary injury.

93.     As a proximate result of Defendants' continuing trespass on Class members' MDUs, Defendants are liable to Class members for damages measured by the value of  the illegal use of plaintiffs' real

16

property to DIRECTTV.

94.    As a proximate result of Defendants' continuing trespass on Class members' MDUs, Defendants are liable to Class members for damages measured by the value of the illegal use of plaintiffs' real property to MAS TEC.

95.    As a proximate result of Defendants' continuing trespass upon Class members' MDUs,Defendants are liable to Class members for damages for the costs to remove the DIRECTV Equipment and repair the roof at the sites of affixation.

96.    Defendants' continuing trespass upon Class members' MDUs has been intentional, deliberate, with knowledge of a high degree of probability of harm to Class members and reckless indifference to the law.

97.    Defendants' continuing trespass upon Class members' MDUs offends public policy as it has been established by statutes, the common law and otherwise; is immoral, unethical, oppressive, unscrupulous and demonstrates a reckless disregard of the exclusive possessory real property interests of Plaintiffs

98.    Defendants are liable to Class members for punitive damages.

### THIRD COUNT
### (Individual Claims under Connecticut Unfair Trade Practices Act)

99.    Plaintiffs incorporate all preceding paragraphs of this complaint as if fully set forth herein.

100.    Defendants' actions and conduct, as described herein, offends public

policy as it has been established by statutes, the common law and otherwise.

101.   Defendants' actions and conduct, as described herein violates the Federal Communication  Commission's Second Report and Order, *In the Matter of Implementation of Section 207 of the Telecommunications Act of 1996, Restrictions on Over-the-Air Reception Devices* , 1998 WL 888546 (1998), 47 C.F.R. 1.4000(d) a tenant does not have direct or indirect control over the exterior walls or roof of an MDU, which are common or restricted areas, and therefore the Regulation does not authorize installation of Equipment in those areas without consent of the Landlord.

102.   Defendants' actions and conduct, as described herein, tortiously interfered with and circumvented the terms and conditions of the lease existing between the Plaintiffs and their tenant on the 3rd floor.

103.   Defendants' actions and conduct, as described herein, demonstrated a reckless disregard of the exclusive possessory real property interests of Plaintiffs.

104.   Defendants' actions and conduct, as described herein was immoral, unethical, oppressive and unscrupulous.

105.   Defendants' actions and conduct, as described herein, have directly caused Plaintiffs to have suffered ascertainable loss, due to the CUTPA violations alleged.

106.   As a proximate result of Defendants' continuing CUTPA violations, Defendants are liable to Plaintiffs for compensatory damages.

107.    As a proximate result of Defendants' continuing CUTPA violations,

Defendants are liable to Plaintiffs for consequential damages.

107.   As a proximate result of Defendants' continuing CUTPA violations, Defendants are liable to Plaintiffs for punitive damages.

108.   As a proximate result of Defendants' continuing CUTPA violations, Defendants are liable to Plaintiffs for reasonable attorney's fees and the costs of this litigation.

109.   Plaintiffs are entitled to injunctive and other equitable relief, enjoining Defendants' continuing CUTPA violations, as alleged herein.

## FOURTH COUNT
### (Class Claims under Connecticut Unfair Trade Practices Act)

110.   Plaintiffs incorporate all preceding paragraphs of this complaint as if fully set forth herein.

111.   Defendants' actions and conduct, as described herein, offends public policy as it has been established by statutes, the common law and otherwise.

112.   Defendants' actions and conduct, as described herein violates the Federal Communication  Commission's Second Report and Order, In the Matter of Implementation of Section 207 of the Telecommunications Act of 1996, Restrictions on Over-the-Air Reception Devices , 1998 WL 888546 (1998), 47 C.F.R. 1.4000(d) a tenant does not have direct or indirect control over the exterior walls or roof of an MDU, which are common or restricted areas, and therefore the Regulation does not authorize installation of Equipment in those areas without consent of the Landlord.

113.   Defendants' actions and conduct, as described herein, tortiously

interfered with and circumvented the terms and conditions of the leases and leasehold interests existing between members of the Class and their respective tenants.

114.    Defendants' actions and conduct, as described herein demonstrated a reckless disregard of the exclusive possessory real property interests of  the Class members.

115.    Defendants' actions and conduct, as described herein was immoral, unethical, oppressive and unscrupulous.

116.    Defendants' actions and conduct, as described herein, have directly caused members of the Class to have suffered ascertainable loss, due to the CUTPA violations alleged.

117.    As a proximate result of Defendants' continuing CUTPA violations, Defendants are liable to members of the Class for compensatory damages.

118.    As a proximate result of Defendants' continuing CUTPA violations, Defendants are liable to members of the Class for consequential damages.

119.    As a proximate result of Defendants' continuing CUTPA violations, Defendants are liable to members of the Class for punitive damages.

120.    As a proximate result of Defendants' continuing CUTPA violations, Defendants are liable to members of the Class for reasonable attorney's fees and the costs of this litigation.

121.    Members of the Class are entitled to injunctive and other equitable relief, enjoining Defendants' continuing CUTPA violations, as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for Judgment as follows:

(a)     Certifying this case as a Class Action with Plaintiffs as Class representatives and t h e i r   a t t o r n e y s   as Class counsel;

(b)     Awarding Judgment to Plaintiffs for all available  damages and other relief under the FIRST and THIRD COUNTS asserted;

(c)     Awarding Judgment to members of the Class for all available damages and other relief under the SECOND and FOURTH COUNTS asserted;

(d)     Awarding Plaintiffs and members of the Class their costs and disbursements,  including reasonable attorney's fees;

(e)     Awarding Plaintiffs and members of the Class pre-judgment and post-judgment  interest;

(f)     Granting such other and further relief as may be deemed just and proper in the  premises.

Dated: September 8, 2015

BROWN PAINDIRIS & SCOTT, LLP
/s/ Bruce E. Newman
747 Stafford Avenue
Bristol, CT 0601
Tel: (860) 583-520
Fax: (860)589-5780
Federal Bar No.: 12301
bnewman@bpslawyers.com

BLAU, LEONARD LAW GROUP, LLC
Steven Bennett Blau
Shelly A. Leonard
23 Green Street, Suite 303
Huntington, NY 11743
(631) 458-1010
sblau@blauleonardlaw.com
sleonard@blauleonardlaw.com

*Attorneys for Plaintiff*


CERTIFICATE OF SERVICE

      On this 8th day of September, 2015 a copy of the foregoing Amended Complaint was filed electronically.  Notice of this filing will be sent to all counsel parties of record, via electronic mail by operation of the Court's electronic filing system, or via first-class mail, postage prepaid including to:

Nicholas N. Ouellette, Esq.
Matthew Dallas Gordon, LLC
836 Farmington Avenue, Ste. 221A
West Hartford, CT  06119

             _____/s/_____
             Bruce E. Newman