UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEAN M. FLYNN et al.,<br>  *Plaintiffs*,<br><br>  v.<br><br>DIRECTV, LLC and MAS TEC, INC.,<br>  *Defendants*. | No. 3:15-cv-1053 (JAM) |

**RULING ON DEFENDANTS' MOTIONS TO DISMISS
AND TO STRIKE CLASS ALLEGATIONS**

  Plaintiffs are owners of a residential rental property with tenants who have purchased television services from defendant DIRECTV, LLC (DIRECTV). Plaintiffs claim that DIRECTV and its contractor, defendant Mas Tec Inc. (Mas Tec), installed satellite dishes on the exterior of plaintiffs' property without their consent and in accordance with a business practice that was designed to circumvent their right to withhold consent. Plaintiffs seek to represent a class of similarly situated property owners, alleging state law claims of common law trespass and violation of the Connecticut Unfair Trade Practice Act (CUTPA).

  Defendants have now moved to dismiss plaintiffs' CUTPA claim on the ground that plaintiffs have not pleaded a requisite business relationship with defendants. For the reasons set forth below, I will deny the motion to dismiss the CUTPA claim on the ground that plaintiffs have adequately alleged facts that suffice to meet any business relationship requirement that may be required to sustain a CUTPA claim.

  Defendants have further moved to strike plaintiffs' class action allegations on the ground that plaintiffs cannot meet the so-called "commonality" and "ascertainability" requirements to maintain a class action under Rule 23 of the Federal Rules of Civil Procedure. For the reasons set

forth below, I will grant the motion to strike insofar as plaintiffs seek class-action status to litigate their claim of common law trespass, because it is clear that individual issues of consent will predominate over the adjudication of any trespass claims. I will otherwise deny the motion to strike insofar as plaintiffs seek class-action status to litigate their CUTPA claim, because it is premature to conclude that plaintiffs cannot satisfy the commonality and ascertainability requirements for their CUTPA claim.

## BACKGROUND

Plaintiffs are joint owners of a multi-unit building that they rent out to tenants in Waterbury, Connecticut. DIRECTV furnishes satellite-based television programming by means of signals that it broadcasts through the air to satellite receptor "dishes" that are installed at its customers' locations. Mas Tec installs DIRECTV's dishes by means of drilling holes in the exterior walls or roof of the property where dishes are installed.

Plaintiffs allege that defendants installed at least one satellite dish on their property without their consent. According to plaintiffs, this was a product of DIRECTV's business practices that are designed to circumvent a landlord's consent. DIRECTV allegedly provides the tenant customer with a form that instructs the customer to obtain consent from his or her landlord to place a satellite dish on the property. The new customer must then sign the form, which represents that the customer has obtained landlord consent. DIRECTV does not, however, independently confirm with the landlord that consent was actually given. Plaintiffs further contend that Mas Tec technicians are trained never to seek any kind of approval from landlords while installing the dishes. After a customer terminates her service, DIRECTV allegedly has a policy of abandoning the dishes, leaving the landlords to expend the effort to remove and dispose of them.

Plaintiffs claim that DIRECTV and Mas Tec have installed and subsequently abandoned dishes without landlord consent on numerous buildings in Connecticut. Accordingly, they seek to bring this action on behalf of all others similarly situated, with the following class definition:

> All persons and/or entities ("Landlords") that own and lease residential multiple dwelling units ("MDU's") in the State of Connecticut, upon which Defendants, by their agents, servants and/or employees have, on at least on occasion during the applicable statutory period [3 years prior to filing], without first receiving prior written Landlord authorization and/or permission, installed DIRECTV equipment on the roof and/or exterior walls of said MDU.

Amended Complaint, Doc. #28, ¶ 7.

On behalf of themselves and the class, plaintiffs allege two causes of action: that defendants have trespassed on plaintiffs' and the class members' property (Counts 1 and 3) and that defendants have violated CUTPA with respect to plaintiffs and the class as a whole (Counts 2 and 4). Defendants now move to dismiss the CUTPA claims and move to strike the class allegations. Docs. #22; #47.[1]

## DISCUSSION

The principles governing this Court's consideration of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) are well established. First, the Court must accept as true all factual matter alleged in a complaint and draw all reasonable inferences in the plaintiffs' favor. *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). But, "'[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

---

[1] Although DIRECTV has moved to strike—rather than to dismiss—the class allegations, it is within my discretion to treat this as a motion to dismiss. *See Wray v. Edward Blank Associates, Inc.*, 924 F. Supp. 498, 501 (S.D.N.Y. 1996). I will treat the motion to strike the class allegations as a motion to dismiss the two class-based counts of the complaint (Counts 2 and 4).

*Motion to Dismiss CUTPA Claims*

CUTPA prohibits the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42–110b(a). The statute "provides a private cause of action to [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice." *Harris v. Bradley Mem'l Hosp. & Health Ctr., Inc.*, 296 Conn. 315, 351 (2010). CUTPA claims can be based on either an "actual deceptive practice" or an unfair practice—that is, a "practice amounting to a violation of public policy." *Ulbrich v. Groth,* 310 Conn. 375, 409 (2013). Here, plaintiff claims that defendants' practices as recounted above amount to a violation of public policy.

Connecticut law has long recognized three factors that determine whether a particular business practice violates CUTPA:

> (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons].

*Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 317 Conn. 602, 609 n.7 (2015). There is no requirement, however, that all three criteria be met "to support a finding of unfairness" for purposes of a CUTPA claim. *Ibid.*

Relying on the Connecticut Supreme Court's decision in *Ventres v. Goodspeed Airport*, 275 Conn. 105 (2005), defendants argue that plaintiff's CUTPA claims (both individually and as a class) must be dismissed because plaintiffs do not plausibly allege the existence of a business relationship between themselves and defendants. I do not agree and conclude that *Ventres* is readily distinguishable from this case.

4

The parties in *Ventres* included a land trust that asserted a CUTPA claim against an airport arising from the airport's trespass upon the land trust's property to cut down trees and remove vegetation. The *Ventres* court principally ruled that the airport's actions did not constitute an "unfair trade practice" within the meaning of CUTPA, because the controversy did not amount to a business dispute but to a property dispute between neighbors:

> Even if we assumed that the land trust defendants are in the business of protecting natural resources, we cannot conclude that the interference with that business by a trespasser constitutes an unfair trade practice. Such a conclusion would convert every trespass claim involving business property into a CUTPA claim . . . . Rather, before the clear-cutting, the relationship was merely one of neighboring landowners. After the clear-cutting, the relationship was one of landowner and trespasser. Accordingly, we reject the land trust defendants' argument that they had a business relationship with the airport defendants.

*Id.* at 157. Only after this analysis did the court further reject the land trust's alternate argument that it did not need to allege any business relationship, and only then did it do so on the grounds that the land trust failed to cite any authority for the proposition, *see ibid.*, rather than on any reasoned explanation why a plaintiff-defendant business-relationship predicate is or should be required to maintain a CUTPA action.

To the extent that some of the language in *Ventres* may be read to suggest a business-relationship prerequisite for a CUTPA action, I conclude that this was dicta and well beyond the rationale that supported and was necessary to the court's decision in *Ventres*. At bottom, the court in *Ventres* was faced with a property dispute between neighbors that did not involve business practices at all. The facts in *Ventres* are nothing like the facts here, where DIRECTV and Mas Tec are alleged to have engaged as a regular course of business practice in the perpetration of a scheme to enrich themselves by means of victimizing and sacrificing the property interests of landlords to control what fixtures are installed on and remain on the landlords' property.

The Connecticut Supreme Court has otherwise made clear that a CUTPA plaintiff need not have a consumer relationship with the defendant. *See, e.g.*, *Macomber*, 261 Conn. 620, 643 (2002). At the least, "a competitor or other business person can maintain a CUTPA cause of action without showing consumer injury." *Ibid.*; *see also Ganim v. Smith & Wesson Corp.*, 258 Conn. 313, 372 (2001) (declining to resolve whether CUTPA standing is limited *only* to those with consumer, competitor, business, or other commercial relationships with the defendant).

Defendants correctly note that these cases do not control the issue before me. But they do reflect the Connecticut Supreme Court's consistent view that CUTPA should be broadly construed to protect against unfair business practices in many shapes and forms. *See, e.g.*, *Kim v. Magnotta,* 249 Conn. 94, 108 (1999) ("[W]e have interpreted the statute generously to implement its remedial purposes even without a specific statutory basis for our decision."); *Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 497 (1995) ("The legislative history of CUTPA reveals that, although consumers were expected to be a major beneficiary of its passage, the act was designed to provide protection to a much broader class."); *Heslin v. Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 520 (1983) (noting "the liberal construction to which a remedial statute such as CUTPA is entitled"); *see also In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 142 (D. Conn. 2014) ("CUTPA's legislative history indicates that the Connecticut legislature intended that the statute be implemented broadly to stamp out the practice of fraudulent, deceptive, and unfair business conduct generally. . . . The Connecticut Supreme Court has also consistently interpreted CUTPA broadly.").

To be sure, CUTPA's reach is not "limitless." *Ganim*, 258 Conn at 373. The *Ventres* court therefore thought it absurd that "every trespass claim involving business property" might be converted "into a CUTPA claim." *Ventres*, 275 Conn. at 157. But that is not the situation here.

The only material similarity between the facts of *Ventres* and the instant case is that both involve trespass. Unlike the airport, defendants here have a broad business strategy that directly implicates plaintiffs' property. This is not two neighbors bickering over their property line.[2]

According to plaintiffs' allegations, defendants engage in a systematic practice designed to carry out commercial activities while avoiding their duties under the law: Defendants know they may only install satellite dishes when they have owner consent, but they train their employees to subvert this requirement and to remain intentionally ignorant of whether such consent has been given. This is precisely the kind of slippery business practice that CUTPA was broadly designed to remedy.

Indeed, defendants' practice succeeds by exploiting the very *lack* of their direct business relationship with the actual property owners and by taking advantage instead of the pre-existing business relationship between tenants and landlords. Accordingly, even if I were to conclude that some business relationship is required for a CUTPA claim (an issue that I need not decide), it is clear that an adequate business relationship exists here and that this relationship has allegedly been subject to exploitation by defendants in this case.

Nor does other case law convince me that plaintiffs are not entitled to the protection of CUTPA. A number of courts have found that certain classes of plaintiffs cannot maintain CUTPA claims. These cases are often fact-bound, and it is difficult to extract consistent principles from them that help to resolve this case. Some courts, for example, have found that

---

[2] Nor do I take *Ventres* to have definitively resolved the issue left open in *Ganim v. Smith & Wesson Corp.*, 258 Conn. 313 (2001). In *Ganim*, the Connecticut Supreme Court held that the plaintiff did not have standing under CUTPA because of the remoteness doctrine. In so holding, it explicitly declined to resolve "whether CUTPA standing is confined to consumers, competitors and those in some business or commercial relationship with the defendants." *Id.* 372. *Ventres* held that—whatever relationship a CUTPA plaintiff must have to the defendant—the plaintiffs on *those specific facts* could not maintain a CUTPA action. It did not elucidate the outer bounds of CUTPA standing.

plaintiffs do not have standing under CUTPA if their injuries are very remote effects of the defendant's conduct. *See Ganim*, 258 Conn. at 372; *Conn. Pipe Trades Health Fund v. Phillip Morris*, 153 F. Supp. 2d 101, 113-14 (D. Conn. 2001) (increased healthcare costs that health funds must pay as a result of smoking too remote an injury to give rise to CUTPA liability against tobacco companies). But there is no question here that defendants' alleged conduct directly affected plaintiffs—they allegedly entered plaintiffs' property and affixed satellite dishes without permission, and then they left the dishes there to be removed by plaintiffs.

Still other cases have denied CUTPA claims if there was no commercial relationship between the parties whatsoever, and the plaintiffs did not suffer harm in their capacity as consumers or businesspeople. For instance, in *Gersich v. Enterprise Rent A Car*, 1995 WL 904917 (D. Conn. 1995), the court held that plaintiffs, who had suffered personal injury after a crash with a car rented from the defendant, were "not within the class of persons that CUTPA intended to protect." *Id.* at *5; *see also Aviles v. Wayside Auto Body Inc.*, 49 F. Supp. 3d 216, 232 (D. Conn. 2014) (niece of car owner could not maintain a CUTPA claim where it was her uncle's car that was being repossessed and any harm she suffered was merely the result of being present at the repossession); *Goldsich v. City of Hartford*, 571 F. Supp. 2d 340, 346-47 (D. Conn. 2008) (victim of fight in parking lot outside concert, to which he did not purchase a ticket, could not bring a claim under CUTPA against promoters of the concert). These cases are readily distinguishable from the instant case, where plaintiffs allegedly suffered an injury as business people when defendants employed a business practice to alter plaintiffs' business property without permission.

In short, I reject defendants' argument that plaintiffs have failed to allege an actionable CUTPA claim. I conclude that CUTPA does not require a direct business relationship between a

plaintiff and a defendant and that, on the facts presented here, involving alleged exploitation by defendants of a business relationship between plaintiffs and third-parties, any business relationship requirement for a CUTPA claim has been adequately established.[3]

### *Motion to Strike Class Allegations*

Courts are generally reluctant to dismiss class allegations at the pleading stage. *See, e.g.*, *Chenesky v. New York Life Ins. Co.*, 2011 WL 1795305, at *1 (S.D.N.Y. 2011). Such allegations must, however, at least plausibly suggest that plaintiffs will produce enough evidence to justify class certification. *See Kassman v. KPMG*, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013). Under Fed. R. Civ. P. 23(c)(1)(A), a court may determine whether the class can be certified "[a]t an early practical time," and may make this determination even before the plaintiffs have moved for certification. *See also Pilgrim v. Universal Health Care, LLC*, 660 F.3d 943, 949 (6th Cir. 2011).

At this stage, the essential question before me is whether plaintiffs' class claims cannot be certified as a matter of law. *See Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012). If any plausibly discoverable facts could render the class appropriate for certification, then plaintiffs would be entitled to proceed at this time and to seek discovery that might support their class-wide allegations. *See Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 515 (S.D.N.Y. 2015).

DIRECTV argues that plaintiffs' proposed class cannot be certified because the class cannot satisfy Rule 23's requirements of predominance and ascertainability. For reasons set forth below, I agree with defendants as to plaintiffs' trespass claims, because it is clear to me that

---

[3] Nor will I strike the claim for punitive damages at this stage. The Connecticut Supreme Court has consistently held that courts may award punitive damages in CUTPA claims when a defendant's conduct was recklessly indifferent. *See Fairchild Heights Residents Ass'n, Inc. v. Fairchild Heights, Inc.*, 310 Conn. 797, 824 (2014). Courts also have broad discretion in the imposition of punitive damages under CUTPA. *Ibid.* At this stage of the litigation, plaintiffs have alleged sufficient facts to make it plausible that DIRECTV acted with reckless indifference toward the plaintiff landlords in failing to seek their consent.

issues of individual consent would necessarily predominate over any common issues. But I do not agree as to plaintiffs' CUTPA claims, because it is premature at this time to conclude that issues of individual consent will predominate or that the class will not be ascertainable.

In order to be certified, a putative class must comport with the requirements of Rule 23. Plaintiffs here will eventually seek to have their class certified under Rule 23(b)(3), which, among other things, requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

The first class claim concerns common law trespass. The elements of a trespass action in Connecticut are: "(1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury." *City of Bristol v. Tilcon Minerals, Inc.*, 284 Conn. 55, 87 (2007). If a property owner gives her consent to enter a property, there can be no trespass. *See Hanson v. Carroll*, 133 Conn. 505, 508 (1947). Consent may be given in any number of ways, and consent need not be written down, or even spoken. *See, e.g.*, *Restatement (Second) of Torts*, § 892 & com. b ("[Consent] need not . . . be so manifested by words or affirmative action. It may equally be manifested by silence or inaction.").

It is an essential element of an action for trespass that the alleged trespasser had no right to enter or damage the property at issue. Here, defendants' alleged business practice entails having a tenant certify that the tenant has obtained the landlord's consent. Although some tenants might well falsely certify that such consent has been granted (and defendants may well count on some tenants doing so), many tenants will doubtlessly seek and obtain the consent of their landlords. Because the issue of consent will require an individual-by-individual consideration of

10

the interaction (if any) between tenant and landlord, the issue of consent cannot be adjudicated on a class-wide basis.

Nor does it alter the analysis—contrary to plaintiffs' arguments—if consent is characterized as a defense instead of as an element of the claim. *See Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010) ("[C]ourts must consider potential defenses in assessing the predominance requirement."). With respect to the trespass claim, common questions thus do not predominate over individual questions. The class allegations regarding trespass will therefore be dismissed.

Defendants argue that the same logic dictates dismissing the class CUTPA claim. But the CUTPA claim differs from the trespass claim in a key respect. With trespass, by far the most significant question of liability is whether the landlords consented to defendants entering their property. By contrast, CUTPA forbids business practices that violate public policy. *See Ventres*, 275 Conn. at 155. Plaintiffs allege that defendants employ a policy to remain willfully ignorant of whether landlord have provided consent. That some landlords may have consented to having the dishes affixed to their property does not make the alleged practice as a whole any more scrupulous or proper, given the likelihood that many landlords will not consent and still be victim to defendants' trespass.

Of course, any plaintiff seeking to recover would have to show that she suffered ascertainable loss as a result of the practice. *See Hinchliffe v. American Motors Corp.,* 184 Conn. 607, 615 (1981). But the predominance requirement does not require that *every* significant question in the case be subject to class-wide resolution. It is enough that an issue that is "central to the validity of each one of the claims" can be resolved "in one stroke," and that such questions predominate over individual ones. *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011); *see Weiner v.*

*Snapple Beverage Corp.*, 2010 WL 3119452, at *5 (S.D.N.Y. 2010) ("[P]laintiff need not show the exclusivity of common questions[;] it must show their predominance."). Indeed, "[e]ven if there are defenses that affect Class Members differently, that alone does not compel a finding that individual issues predominate over common ones." *Karic v. Major Auto. Companies, Inc.*, 2016 WL 1745037, at *12 (E.D.N.Y. 2016).

Perhaps plaintiffs will not be able to show ascertainable loss on behalf of all the class members in one stroke. But it also may be that plaintiffs, after conducting discovery, can refine the class to mitigate these concerns. They could, for example, restrict the class definition to landlords who, in their leases, specifically forbid tenants from altering the common areas, including the exterior of the building. Such a definition could reduce the salience of individualized concerns, even if defenses may be applicable to certain members. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *45 (E.D.N.Y. 2014) ("Courts presiding over class actions are certainly capable of dealing with the fact that a class may have a few outliers that went undamaged. And . . . [remaining] problem[s] should be solved by refining the class definition rather than by flatly denying class certification on that basis."); *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."). In any case, further proceedings may resolve whether defendants systematically committed unfair trade practices toward all the class members.

To be sure, "the ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable

relief." *Hinchliffe,* 184 Conn. at 615. Where individualized proof is required to establish ascertainable loss, individual issues may predominate over common ones. *Cf. Collins v. Anthem Health Plans, Inc.*, 275 Conn. 309, 335 (2005) (declining to certify CUTPA class action under Connecticut procedural law because of "the need to examine each class member's individual position to determine whether he or she suffered an injury in fact"). At this early stage, however, it would be premature to dismiss the CUTPA class claim on this basis. *See, e.g.*, *Chen–Oster,* 877 F. Supp. 2d at 117 ("Generally speaking ... motions [to strike class allegations] are deemed procedurally premature."). Defendants may raise this argument again (if warranted) at the certification stage following further factual development.

Defendants further argue that the proposed class definition is overbroad and not ascertainable. "The Second Circuit has cautioned against certifying overbroad classes." *Estate of Gardner v. Continental Cas. Co.*, 2016 WL 806823, at *8 (D. Conn. 2016). The Second Circuit also recognizes an "implied requirement of ascertainability" in Rule 23. *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015). This requirement hinges on administrative concerns, and the question is whether a court will be able to readily determine if a given individual is a member of the class. "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Id.* at 24-25.

It is possible that plaintiffs' proposed class at this stage—which includes all relevant Connecticut landlords who did not provide *written* consent—is overbroad because it may include class members who gave their consent in another fashion. Defendants also appear to argue that if plaintiffs' definition were refined to include only landlords who did not consent to dish installation, the class would no longer be ascertainable by objective criteria. In substance,

defendants are essentially making the same argument they made with regard to predominance: in their view, there are too many thorny, individualized issues to permit class certification. For the same reasons that I cannot yet conclude that common issues do not predominate, I also cannot yet conclude that the class is fatally overbroad or not ascertainable. At the least, plaintiffs should have the opportunity to refine their proposed class definition to address the concerns raised here. *See In re: Libor-Based Fin. Instruments Antitrust Litig.*, 2016 WL 2851333, at *2 (S.D.N.Y. 2016) ("[W]ith an overbroad class, reformation of the class definition, if possible, is the appropriate response."). Again, defendants may reargue these points at class certification.

## CONCLUSION

The motions to dismiss (Docs. #22, #47) are GRANTED as to the class claim alleging trespass (Count Two), and DENIED as to both the individual and class CUTPA claims (Counts Three and Four).

It is so ordered.

Dated at New Haven this 22d day of August 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge