UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEAN M. FLYNN, *et al.*,<br>*Plaintiffs*,<br><br>v.<br><br>DIRECTV, LLC, *et al.*,<br>*Defendants*. | No. 3:15-cv-01053 (JAM) |

**RULING DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs are landlords who claim that defendants installed satellite television equipment on their property without their consent. On behalf of themselves and thousands of allegedly similarly situated landlords throughout Connecticut, they have sued defendants for trespass and under the Connecticut Unfair Trade Practices Act (CUTPA).

I have previously dismissed plaintiffs' class action allegations as to their trespass claim. Plaintiffs now move for class certification as to their CUTPA claim. I will deny the motion for class certification on two grounds. First, plaintiffs have not proposed a class for which all members have an injury-in-fact that would allow them constitutional standing to maintain a claim. Second, plaintiffs have failed to show that common questions of law or fact predominate over individual questions of law or fact.

### BACKGROUND

Defendant DIRECTV furnishes satellite-based television programming by means of signals that it broadcasts through the air to small satellite receptor "dishes" at customers' locations. When a customer in Connecticut signs up for service from DIRECTV, a technician from defendant MasTec North America, Inc. (MasTec) goes to the customer's location to install

1

the DIRECTV satellite dish. The installation ordinarily entails the drilling of holes in the exterior walls or roof of the building where a customer lives in order to affix the satellite dish.

Plaintiffs own a three-story multi-dwelling unit (MDU) building that they lease to tenants in Waterbury, Connecticut. They have filed this lawsuit on behalf of themselves and a putative class of thousands of other landlords in Connecticut alleging that defendants wrongfully install satellite dishes on their property without obtaining their written consent. According to plaintiffs, defendants have a business practice that is designed to allow them to install DIRECTV dishes for tenant customers without obtaining landlords' consent.

When DIRECTV signs a tenant customer up to receive its services, DIRECTV and MasTec have the customer sign a work order agreement stating that the tenant has received the landlord's permission or otherwise authorizes the installation of the satellite dish on the property:

> Land Lord Permission: I confirm that I have been granted permission or authorize the DIRECTV Home Service Provider [MasTec] to install a DIRECTV Satellite System at the above mentioned address. I understand that a satellite dish may need to be permanently fixed to the structure and modifications, including the drilling of holes, may be necessary. In no event shall either the DIRECTV Home Service Provider or DIRECTV have any obligation to remove the system or accept any liability whatsoever for violations of my lease/rental agreement.

Doc. #97-10 at 3; Doc. #101-4 at 2. When the MasTec technician arrives at the customer's location to do the installation, the technician has the customer sign the work order form on a hand-held electronic device stating that the customer has permission from the landlord, and a confirmation email with the above-quoted language is then sent to the customer following the installation. Doc. #97-3 at 27; #97-10 at 2-3.

Neither DIRECTV nor MasTec directly contact the landlord to obtain permission to install a DIRECTV satellite dish. Technicians are told that "[y]ou do not need to speak with or

2

receive a signature from the landlord," and "[t]he customer is responsible for getting this permission." Doc. #101-3 at 2.

Plaintiffs filed this lawsuit alleging a trespass claim and a CUTPA claim. Two years ago, I denied defendants' motion to dismiss the CUTPA claim, rejecting defendants' argument that the CUTPA claim could not be sustained in the absence of a business relationship between plaintiffs and defendants. *See Flynn v. DIRECTV, LLC*, 2016 WL 4467885, at *2–5 (D. Conn. 2016).

I further granted in part and denied in part defendants' motion to dismiss plaintiffs' class action allegations. As to plaintiffs' trespass claim, I noted that any trespass claim would be defeated by evidence of consent (whether consent is viewed as an element of a trespass claim or a defense) and that "[a]lthough some tenants might well falsely certify that such consent has been granted (and defendants may well count on some tenants doing so), many tenants will doubtlessly seek and obtain the consent of their landlords." *Id.* at *6. Regardless whether a tenant acted truthfully or not, "[b]ecause the issue of consent will require an individual-by-individual consideration of the interaction (if any) between tenant and landlord, the issue of consent cannot be adjudicated on a class-wide basis." *Ibid*.

As to the CUTPA claim, I concluded that it would be premature at the bare pleadings stage to strike the class action allegations. I concluded that "the CUTPA claim differs from the trespass claim in a key respect," in that regardless of individual consent "CUTPA forbids business practices that violate public policy" and that the fact "[t]hat some landlords may have consented to having the dishes affixed to their property does not make the alleged practice as a whole any more scrupulous or proper, given the likelihood that many landlords will not consent and still be victim to defendants' trespass." *Ibid*. On the other hand, I voiced some doubt about

3

whether plaintiffs could ever define their class in a cognizable and manageable way that would satisfy CUTPA's individual "ascertainable loss" requirement, in view that if some landlords in fact consented (even if not in writing but by means of oral consent), then plaintiffs would be unable to show on a class-wide basis that any such consenting landlord class members suffered an ascertainable loss as required for a CUTPA claim. *Id.* at *6–7. Notwithstanding these doubts, I decided that "plaintiffs should have the opportunity to refine their proposed class definition to address the concerns raised here." *Id.* at *7.

The parties have conducted extensive discovery in the two years since I issued that ruling, and plaintiffs now move to certify a class under Fed. R. Civ. P. 23(b)(3) with the following class definition:

> All persons and/or entities ("Landlords") that own and lease residential multiple dwelling units ("MDU's") in the State of Connecticut, upon which Defendants, by their agents, servants and/or employees have, on at least one occasion during the applicable statutory period, without first receiving prior written Landlord authorization and/or permission, installed DIRECTV satellite dish model Ka/Ku, on the roof of said MDU.

Doc. #92-1 at 6.

## DISCUSSION

Rule 23 of the Federal Rules of Civil Procedure permits a federal court to certify a class action by which named plaintiffs may litigate claims on behalf of a class of similarly situated aggrieved class members. "Class actions under Rule 23 of the Federal Rules of Civil Procedure are an exception to the general rule that one person cannot litigate injuries on behalf of another." *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 93 (2d Cir. 2018).

In order for the Court to grant plaintiffs' motion to certify a class under Fed. R. Civ. P. 23(b)(3), plaintiffs must satisfy seven requirements. First, plaintiffs must satisfy the four threshold requirements of Rule 23(a)—numerosity, commonality, typicality, and adequate

4

representation of the class. *See In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017). Next, plaintiffs must further satisfy two more requirements under Rule 23(b)(3)—predominance and superiority. *Ibid.* Lastly, plaintiffs must otherwise satisfy "'an implied requirement of ascertainability in Rule 23,' which demands that a class be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Ibid.* (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)).

It is axiomatic that the federal courts lack jurisdiction over a lawsuit unless a plaintiff alleges a concrete and particularized injury-in-fact that is fairly traceable to a defendant's wrongful conduct and redressable by a court order. *See, e.g., Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 79 (2d Cir. 2017). "The filing of suit as a class action does not relax this jurisdictional requirement." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006). Accordingly, as the Second Circuit has made clear, not only must the named plaintiff in a class action have individual standing to sue, but "no class may be certified that contains members lacking Article III standing." *Id.* at 264. While each member of a class is not required to submit evidence of personal standing, *id.* at 263, the class nonetheless "must . . . be defined in such a way that anyone within it would have standing." *Id.* at 264. Of course, if the rule were otherwise, then class actions would become a means for courts to award money and relief to multitudes of class members who were never injured at all.[1]

---

[1] Not to the contrary is the Second Circuit's recent decision in *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88 (2d Cir. 2018), in which the court of appeals concluded that constitutional standing analysis should not govern the consideration of certification for a multi-state class action involving claims brought under parallel state consumer protection laws. A principal issue presented in *Langan* was whether named plaintiffs from one State could press the claims of plaintiffs from other States whose claims of injury arose from alleged violations of different state laws. The court of appeals concluded that this issue should not be addressed by means of evaluating whether the named class plaintiff had "standing" to assert the claims of consumers from other States but whether the predominance requirement could be satisfied in light of any differences among the law of multiple States. The case before me now involves plaintiffs from one State and an issue—not discussed in *Langan*—concerning whether the

The problem for plaintiffs here is that their proposed class includes only those landlords who did not give *written* consent. As I explained in my prior ruling on defendants' motion to dismiss, Connecticut law allows for consent to be either oral or written in form. Consent may be given in any number of ways, and consent need not be written down, or even spoken. *See, e.g.*, Restatement (Second) of Torts, § 892 & com. b ("[Consent] need not . . . be so manifested by words or affirmative action. It may equally be manifested by silence or inaction."). In view that a landlord may consent by means other than a formal writing, this means that plaintiffs' proposed class will necessarily include landlord members who have in fact validly consented to the installation of a DIRECTV satellite dish—that is, landlords who have not suffered any wrong or injury at all.[2]

Even if I could overlook this problem that plaintiffs have defined their class to include members who have no standing, it is equally clear that plaintiffs cannot satisfy the predominance requirement for a class action. The predominance requirement provides that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). As the Second Circuit has recently explained, "[t]he predominance requirement is satisfied if 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof,' and 'these particular issues are more substantial than the issues subject only to individualized proof.'" *Langan*, 897 F.3d at 97 (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)).

---

class has been defined in a manner to include only persons who have suffered an injury-in-fact sufficient for constitutional standing.

[2] To the extent that plaintiffs might re-craft the class definition to include landlords who neither gave written nor oral consent, this might redress the standing problem but expand the degree to which individual consent issues would need adjudication in derogation of the predominance requirement discussed below.

Here, there is no doubt that at least one element of plaintiffs' CUTPA claim—ascertainable loss—will be subject to individualized proof. Every CUTPA claim requires proof not only of an unfair business practice but also of an ascertainable loss of money or property. *See* Conn. Gen. Stat. § 42-110g(a); *Landmark Inv. Grp., LLC v. CALCO Const. & Dev. Co.*, 318 Conn. 847, 880 (2015). It follows that no landlord is an appropriate class member unless the landlord has suffered some ascertainable loss. *Cf. Neighborhood Builders, Inc. v. Town of Madison*, 294 Conn. 651, 663 (2010) (concluding under state law class action rules that "in order to certify a CUTPA claim for class action status, the representative plaintiffs must prove, in addition to the fact that the defendant engaged in unfair or deceptive acts or practices, that each putative class member has suffered an ascertainable loss as a result of the defendant's acts or practices").

Of course, the fact that one element of plaintiffs' claim will be subject to individualized proof does not necessarily resolve the predominance question, because a court must still step back to consider whether those elements of plaintiffs' claim that are subject to generalized proof are "more substantial" than the elements or issues that are subject only to individualized proof. *See, e.g.*, *Roach*, 778 F.3d at 405. Here, there are aspects of plaintiffs' CUTPA claim that appear to be subject to common class-wide proof, namely defendants' use of a common form and practice to secure consent from a tenant for the installation of a DIRECTV dish on a landlord's property. Still, the ultimate wrongfulness (if any) of defendants' practice turns on an inquiry about whether defendants could rely in good faith on tenants' representations about their landlord's consent. This in turn would rely heavily on individualized proof about what steps tenants took to obtain consent (as well as what restrictions may exist under individual lease

agreements). Thus, not only would individualized proof be required to determine if there has been an ascertainable loss but also to determine whether defendants' practices are unfair at all.

Accordingly, because of individualized issues of landlord consent, plaintiffs have not carried their burden to establish the predominance requirement. *See e.g.*, *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468–69 (6th Cir. 2017) (affirming district court's determination that predominance requirement not established for class certification of action under Telephone Consumer Protection Act involving alleged unsolicited faxes in light of individualized issue of consent to such faxes); *Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 539 (D. Minn. 2017) (predominance requirement not established for class certification of action under Telephone Consumer Protection Act involving alleged marketing calls in light of individualized issue of consent to such calls). My conclusion is reinforced by defendants' arguments that individualized proof will also be required as to the terms of specific lease agreements and the amount of damages incurred from property to property. *See* Doc. #97 at 29–35.

## CONCLUSION

I have considered all of plaintiffs' remaining arguments and reject them for substantially the reasons set forth in defendants' briefing. Plaintiffs' motion for class certification (Doc. #92) is DENIED.

It is so ordered.

Dated at New Haven this 20th day of August 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge